819 F.2d 1139
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
J. HEALTH CARE CENTER, INC.; Mary G. Anderson, a/k/a Jeri
Anderson; C. Donald Stone; John A. McNeely,
Defendant-Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
C. Donald STONE, Defendant-Appellant.
 Nos. 86-5581, 86-5582.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 4, 1987.
Decided May 19, 1987.
 
 Before HALL and ERVIN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 ERVIN, Circuit Judge:
 
 I.
 
 1
 Appellant-defendants in this case were convicted for various fraudulent endeavors in connection with a nursing home. Defendant J. Health Care Center, Inc., was incorporated on May 28, 1976, to operate a nursing home in Simpsonville, South Carolina. It signed a contract with the South Carolina Department of Social Services on January 1, 1978, enabling it to service Medicaid patients. Defendant Mary G. Anderson was President, Secretary, Treasurer and sole stockholder of J. Health Care Center at all relevant times. Defendant John A. McNeely, Sr., was the public accountant for J. Health Care Center at all relevant times. He prepared the cost records that J. Health Care Center sent annually to the Department of Social Services to justify its Medicaid reimbursement; he also prepared J. Health Care Center's corporate income tax returns, Mary Anderson's personal income tax returns, and the financial books for United Medical and Surgical Supply Corporation (hereafter "United Medical"), United Mortgage & Investment Co., Inc. (hereafter "United Mortgage") and Unico Development, Inc. (hereafter "Unico"), three other players in this apparent scheme. Defendant C. Donald Stone was the Executive Vice-President of United Medical and President of United Mortgage at all relevant times. He also owned Unico, which built the building occupied by J. Health Care Center. Stone leased that building to J. Health Care Center.
 
 
 2
 As a result of audits by the Department of Social Services and an investigation by the Internal Revenue Service, a multi-count indictment was returned against the above defendants, and others, on December 4, 1985. The indictment charged J. Health Care Center, Anderson, McNeely, and Stone with conspiracy to defraud the United States Department of Health and Human Services and the Department of the Treasury;[1] each defendant was also charged with four counts of making false statements concerning matters within the jurisdiction of the Department of Health and Human Services.[2] Stone and Anderson were charged with the payment of a kickback in connection with the provision of Medicaid services.[3] McNeely was charged with three counts of preparing false income tax returns.[4] McNeely and Anderson were charged with obstruction of justice.[5] Anderson was further charged with two counts of suborning perjury.[6]
 
 
 3
 The jury convicted J. Health Care Center of four counts of making false statements. Anderson was convicted of four counts of making false statements, one count of receiving a kickback, obstruction of justice, and two counts of suborning perjury. McNeely was convicted of four counts of making false statements, three counts of filing false tax returns, and one count of obstruction of justice. Stone was convicted only of the one count of assisting in the payment of a kickback.
 
 
 4
 Appellants raise three claims of error in this appeal: the quality of the evidence used to convict them, the status of a putative bill of particulars that the government allegedly violated, and the fact that Stone was not given a separate trial. We find each claim to be without merit and so affirm the judgments.
 
 II.
 
 5
 The appellants first claim that the evidence was insufficient to convict them, so that the district judge erred in denying their motions for judgment of acquittal. We review such a claim by asking "whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding" of guilt beyond a reasonable doubt. E.g., United States v. MacCloskey, 682 F.2d 468, 473 (4th Cir.1982). The particular complaints of appellants are that the evidence in this case was "so tenuous as to be speculative," and that as to McNeely, there was no false statement of material fact nor any knowing false statement.
 
 
 6
 A. The False Statement Convictions (Counts 2-5)
 
 
 7
 Each defendant except Stone was convicted of four counts of making false statements to the Department of Health and Human Services. These statements were made in the cost reports for 1980 through 1983. Costs were reimbursable only if "reasonably related to the provision of patient care" at the nursing home. The indictment listed eight categories of falsifications made initially on the 1980 report and apparently carried through each year.[7] In addition, there were material omissions from the reports, such as personal life insurance purchased for Anderson.
 
 
 8
 Appellants charge that the regulations governing the cost reports were unclear; that some of the claimed expenses were arguably legitimate; and that the system of accounting imposed by the Department of Social Services required claims to be made for any arguably legitimate expense on each year's report, lest the claim be lost in the future. Appellants further urge that the Department of Social Services' own auditing system was designed to catch any errors and that no attempt was made to hide these categories of expense.
 
 
 9
 As to the arguable legitimacy of the expenses, the jury saw it differently. The government published a comprehensive manual that made clear which expenses were and which were not includable in the Medicaid reimbursement program. The jury simply did not believe defendants' explanation for why checks purportedly written to pay for includable expenses were repeatedly matched by checks later returned to Anderson from the putative vendor, United Medical. The "coincidental" nature of the repeated matching checks, altered documents, missing invoices, and vacillating treatments of journal entries amounted to a strong circumstantial case against the defendants.
 
 
 10
 Defendant McNeely argues that he had no knowledge of these goings-on; he just recorded the figures as they came to him. The jury no doubt weighed this contention against the fact that McNeely trained the bookkeeper for J. Health Care Center, that he prepared Anderson's personal income tax returns, and that he kept the books for United Medical. There was enough evidence to impute knowledge of the fraudulent scheme to McNeely. As the United States Court of Appeals for the Seventh Circuit has recently stated, "a person who has enough knowledge to prompt an investigation and then avoids further knowledge really does 'know' all that the law requires." United States v. Ramsey, 785 F.2d 184, 190 (7th Cir.1986).
 
 
 11
 The defendants' claim that the overstatements in J. Health Care Center's cost reports were not material is no more persuasive than their claim of ignorance. The overstatements, which totalled nearly $180,000 in 1980, were clearly capable of influencing the Department of Social Services to issue reimbursement checks. The test for materiality is whether the false statement has a natural tendency to influence, or is capable of influencing, the decision of the government agency to which the statement is addressed. E.g., Gonzales v. United States, 286 F.2d 118, 122 (10th Cir.1960), cert. denied, 365 U.S. 878 (1961). The trial judge properly rejected defendants' argument that the existence of a government system for auditing Medicaid reimbursement claims meant that the government could not be misled by false statements. There was no proof at trial that the procedures for auditing Medicaid reimbursement submissions were capable of detecting every erroneous claim, nor do we think that such foolproof procedures are possible. The statements for which the defendants were convicted appear to have been designed precisely for the purpose of obtaining improper reimbursement, and they appear capable of having attained that goal. We accordingly affirm the convictions for making false statements.
 
 B. The Anderson Kickback
 
 12
 Defendants Stone and Anderson were convicted on Count 6 for a kickback in the amount of $9,395.50. There were other alleged kickbacks involved in the total scheme, but this was the only one charged. The government traced the money as follows: on November 30, 1980, J. Health Care Center sent a check to Triple M. Interiors, a local decorator, in the amount of $11,120.50 for work supposedly done at the Center. On December 2, 1980, Triple M. Interiors wrote a check to United Medical for $9,395.50. On December 9, 1980, United Medical wrote a check for $9,395.50 back to Anderson. Stone, Executive Vice-President of United Medical, maintains that Triple M. Interiors sent him the check in payment for faulty work done on another contract. He further claims that he owed money to Anderson as a result of the sale of another nursing home by Anderson's husband to a third party. The government responds that Stone demonstrated no legal obligation to Anderson arising out of that sale and that, whether or not money was owed to United Medical by Triple M. Interiors from another contract, the whole story does not explain the matching checks.
 
 
 13
 The jury asked for documents that would evidence the legal obligation of Stone in the sale of the other nursing home, but no such documents were entered into the record. Stone introduced a document that purported to show that the $9,395.50 was the exact amount that he owed as a guarantor of the person who purchased the nursing home from Anderson's husband, but the jury apparently chose not to credit this self-serving document. The defendants argue that the jury's obvious concern with Count 6, the kickback count, demonstrated that the evidence was slim. That seems to be true, but the slim evidence with which the jury was obviously concerned was the evidence of Stone's interest in the other nursing home. Having found that Stone's story was not supported by evidence, and that he had no reason to pay Anderson $9,395.50, the jury convicted him and Anderson on the kickback count. The inference of guilt is reasonable, viewing the evidence in a light favorable to the prosecution, and we accordingly affirm the convictions on Count 6.
 
 C. Obstruction of Justice
 
 14
 Anderson was convicted of obstruction of justice for delivering a letter to the United States Attorney's office. The letter was written to her by McNeely after a number of subpoenas had been served on J. Health Care Center. Both McNeely and Anderson had responded to subpoenas. One particular subpoena sought checks written by J. Health Care Center to Unico, the lessor of J. Health Care Center's building. In response, McNeely wrote the problematic letter to Anderson; it stated that the checks were enclosed and added "Also, I'm sure you are aware the required payment for lease insurance to Unico Development Services has not been reimbursed by Medicare or Medicaid." Anderson turned the letter over to the United States Attorney's office and it went before the grand jury.
 
 
 15
 The issue relates to the overstated rent on the building. J. Health Care Center paid Unico $13,800 more than required by its lease each year. The Center reported to its auditors, the State, and the IRS that the excess amount was for lease insurance. In fact, it was used to pay premiums on a personal life insurance policy for Anderson.
 
 
 16
 The intended consequence of the letter was to dissuade the grand jury from pursuing the matter further. The information contained in the letter was not true; there was no lease insurance. Thus, the obstruction of justice conviction of Anderson was proper. As to McNeely, the question was whether he intended to mislead the government by writing the letter. The defendants' position, that McNeely intended the letter only for Anderson, who "would understand that this referred to an anticipated disallowance," is a less plausible explanation than the one the jury chose to believe: that McNeely intended to obstruct justice. We affirm on this count also.
 
 D. Tax fraud
 
 17
 Several items that were improperly accounted for in the cost reports were similarly treated in J. Health Care Center's corporate tax returns, which McNeely prepared. For example, he first expensed and then the next year treated as a capital asset the monies paid to Triple M. Interiors for the alleged work (this was the same money which, in part, circled back to Anderson). Most incriminating, perhaps, was the "Compliance Reserve": an account deducted each year from current income, the name of which changed every year, which was always put in the last or next to last page of journal entries, and which mysteriously reduced J. Health Care Center's tax liability to zero. McNeely claims that this and the other illegal tax accounting practices conformed to the "industry standard." In fact, as the jury found, they add up to the "voluntary, intentional violation of a known duty," United States v. Pomponio, 429 U.S. 10, 12 (1976) (quoting United States v. Bishop, 412 U.S. 346, 360 (1973)), that is required for criminal tax evasion. The evidence of these machinations was clearly sufficient to warrant McNeely's conviction for tax fraud.
 
 E. Suborning perjury
 
 18
 One witness, Chyrie Barbery Pearson, testified that Anderson urged her to lie to the grand jury about some records that were subpoenaed. Pearson testified that she did, in fact, lie. Her story was corroborated in part by three other witnesses. Defendants attack Pearson's credibility, but the jury apparently believed at least the part of her story that laid the blame on Anderson. The perjury conviction is grounded on substantial evidence and is therefore affirmed.
 
 III.
 
 19
 Counsel for Stone sought a bill of particulars. His request was refused, but he was allowed to visit with the prosecutor to go through the prosecution's evidence. After that meeting, involving ten people, counsel for defendants sent a letter to the government supposedly summarizing an agreement not to introduce evidence on overcharging for certain services provided to J. Health Care Center. When the government never replied, defense counsel assumed such evidence would not be introduced. The evidence was introduced. Counsel now relies on his letter as evidence that the government broke its agreement.
 
 
 20
 There is no merit to the contention that this letter was a sort of "de facto" bill of particulars. The only indication that the government in any way agreed to limit evidence of overcharging is this self-serving letter from defendant's counsel, never signed by the government. The trial judge properly rejected the defendants' motion for a mistrial based on this frail reed.
 
 IV.
 
 21
 Finally, defendants urge that Stone should have received a separate trial. Stone was indicted with the other defendants, but was not charged on several of the counts. The only asserted reason for severance was that Stone may have been prejudiced by having to sit at the table with the other defendants, who arguably engaged in more condemnable behavior than did Stone.
 
 
 22
 We adhere to our view that the matter of severance rests in the discretion of the trial judge. See, e.g., United States v. Carmichael, 685 F.2d 903, 910 (4th Cir.1982); United States v. Santoni, 585 F.2d 667, 674 (4th Cir.1978). A joint trial was particularly appropriate in this case, because the defendants were all indicted together and were all involved in the tangled web of transactions that amounted to criminal behavior.
 
 
 23
 For the reasons set forth above, the judgments of the district court are
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 See 18 U.S.C. Sec. 371 (1982) (Count 1)
 
 
 [2]
 See id. Secs. 1001, 1002 (Counts 2-5)
 
 
 [3]
 See 42 U.S.C. Secs. 1396h(b)(1)(B), (b)(2)(B) (1982); 18 U.S.C. Sec. 2 (1982) (Count 6)
 
 
 [4]
 See 26 U.S.C. Sec. 7206(2) (1982) (Counts 7-9)
 
 
 [5]
 See 18 U.S.C. Sec. 1503 (1982) (Count 10)
 
 
 [6]
 See id. Sec. 1622 (Counts 11 and 13)
 
 
 [7]
 The categories and amounts charged for 1980 were:
 Category Amount of Overstatement
Fixed assets-land $ 25,258.00
Fixed assets-nursing equip. 32,296.40
Capital 80,900.00
Nursing supplies 13,590.00
Maintenance-purchased services 9,395.50
Auto-depreciation 1,161.00
Depreciation-nursing equipment 3,230.00
Rent-building 13,800.00
 TOTAL OVERSTATED $179,630.90